# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### CIVIL ACTION NO. 3:14-CV-00586-GCM

| | |
|---|---|
| AMERICAN UNITED LIFE INSURANCE COMPANY, | )<br>)<br>) |
| **Plaintiffs,** | )<br>) |
| v. | ) **ORDER** <br>) |
| JOANNA ARTHUR<br>STEVEN BRUCE SUMPTER, | )<br>)<br>) |
| **Defendants.** | )<br>) |

**THIS MATTER** came before the Court on a jury trial held on January 11-12, 2016. For the reasons set out in this order, the Court will issue findings of fact and conclusions of law consistent with the jury's verdict. Because it appears to the Court that the threshold issue of whether Defendant Steven Sumpter was entitled to a jury on his claims is unclear, the Court will proceed as if the jury's verdict was advisory.

## I. BACKGROUND

This case originated as an action in interpleader. American United Life Insurance Company ("AUL") issued a group life insurance policy to Steven Arthur in 2012. At that time, he named his son, Steven Sumpter, as the primary beneficiary of that policy. In 2014, shortly before his death, Steven Arthur sought and obtained a change in beneficiary form at the office of his employer, Carolina Restaurant Group. In the presence of a payroll supervisor, Steven Arthur changed the beneficiary designations on his policy and named his new wife, and longtime companion, Joanna Arthur, as the primary beneficiary. When Steven Arthur died, AUL

determined that Joanna Arthur was entitled to the funds due under his policy. Steven Sumpter disputed the insurer's decision, arguing that the change in beneficiary form was invalid.

AUL filed this action on October 20, 2014, naming both Sumpter and Arthur as defendants. (Doc. No. 1), and depositing the contested funds with the Court. (Doc. No. 3) Steven Sumpter brought crossclaims again Joanna Arthur, arguing that his father lacked the mental capacity to sign the beneficiary designation, or that he had signed it as a result of undue influence or duress. (Doc. No. 17) In the alternative, he argued that Joanna Arthur had forged his father's signature on the contested document. (Doc. No. 17)

On March 13, 2015, the parties submitted memoranda to the Court on the question of deference to AUL's determination that Joanna Arthur was the appropriate beneficiary of Steven Arthur's benefits and the need for discovery. Arthur argued that under ERISA, deference was due to the Plan Administrator's determination and that the record before this Court must be limited to the administrative record. (Arthur Memorandum, Doc. No. 25) Sumpter disagreed, arguing that because the validity of the operative Plan document was in question, deference was not required and the Court could look to matters outside the administrative record. (Doc. No. 26) Sumpter emphasized the uniquely factual nature of his claims, and cited to the Sixth Circuit's opinion in *Tinsley v. General Motors Corp.*, 227 F.3d 700 (6th Cir. 2000).[1] Finding no authority in this Circuit to suggest an answer to the parties' dispute, and in light of the fact-bound nature of Sumpter's claims, the Court allowed discovery to exceed the administrative record.

---

[1] The *Tinsley* court recognized that "ERISA's mandate that fiduciaries administer plans 'in accordance with the documents and instruments governing the plan,'" typically requires deference to the Plan Administrator and means that "courts need not look beyond the beneficiary designation form to determine the appropriate beneficiary." *Tinsley*, 227 F.3d at 704 n.1 (quoting 29 U.S.C. § 1104(a)(1)(D)). The court went on to explain, however, that this general rule does not apply "where the validity of a plan document itself is in question."

As the parties prepared for trial, an additional problem arose as to whether Sumpter claims would be tried before a jury. Defendant Arthur argued that ERISA preempted Defendant Sumpter's claims, and, as a result, he was not entitled to a jury trial. (Arthur Trial Brief at 5-6, Doc. No. 41) Defendant Sumpter, on the other hand, argued that ERISA did not preempt his claims and that they were governed by North Carolina law. (Sumpter Trial Brief at 4-5, Doc. No. 40) Sumpter further argued that, even if ERISA preempted his claims, it did not necessarily follow that he was not entitled to a jury trial on his claims, each of which was highly fact intensive. (Sumpter Trial Brief at 6, Doc. No. 40) The parties were unable to provide any caselaw from this Circuit that answers this critical question, and the Court has been similarly unable to locate decisive guidance from the Court of Appeals. Having considered all of the arguments, then, the Court again decided to follow the Sixth Circuit's opinion in *Tinsley*, which both parties agreed is the most relevant case, on the question of which substantive law to apply. (Arthur Trial Brief at 5-6, Doc. No. 41; Sumpter Trial Brief at 5-6, Doc. No. 40) Nevertheless, because that case is silent on whether claims of this type should be tried in a bench or jury trial, the Court was forced to make that determination in the first instance. Again, the highly fact-intensive nature of the claims at issue led the Court to empanel a jury. However, because of the genuine lack of clarity, both in this Circuit and others, the Court determined that it would enter findings of fact and conclusions of law consistent with the jury's verdict.

A jury trial was commenced before this Court on January 11, 2016. At the close of evidence, Steven Sumpter voluntarily dismissed his claims that his father lacked the mental capacity to sign the change of beneficiary form and that the form was signed under duress. Joanna Arthur moved for a directed verdict under Rule 50 of the Federal Rules of Civil Procedure on the remaining two claims. The Court granted a directed verdict in Arthur's favor on the undue

3

influence claim after finding that there was insufficient evidence for a reasonable factfinder to conclude that Steven Arthur executed the change in beneficiary form because of undue influence. The Court explained that Sumpter had presented no evidence that Joanna Arthur exerted any influence over her husband's decision to change the beneficiaries on his insurance policy. Rather, the uncontroverted testimony at trial was that the Decedent was a headstrong man and remained so until the end of his life.

Thus, the only remaining jury question was whether the signature on the change in beneficiary form was the genuine signature of Steven Arthur. On January 12, 2016, the jury answered in the affirmative that the signature on the change in beneficiary form was the Decedent's genuine signature. (Doc. No. 61)

## II.   ANALYSIS

Although the Court allowed one of Defendant Sumpter's claims to proceed to the jury, the threshold question of whether he was entitled to a jury on any of his claims is far from clear. Having considered all of the arguments, the Court again decided to follow the Sixth Circuit's opinion in *Tinsley*. However, because the *Tinsley* case does not address the question of whether a jury trial is available, the Court feels compelled to explain the extent to which this issue remains uncertain.

The facts of *Tinsley* are similar to the facts this case. There, the decedent changed the beneficiary of his life insurance policy from his niece to his neighbor shortly before he died, a choice the niece argued was procured by forgery or undue influence. *Id.* at 704-05. The Sixth Circuit held that ERISA preempted Tinsley's claims because they were "relate[d] to" an ERISA-covered plan and thus fell within the scope its preemption provision, 29 U.S.C. §1144(a).[2] *Tinsley*,

---
[2] Defendant Sumpter argued both before and during the trial that ERISA does not preempt his claims, and accordingly they are governed by North Carolina law. The Court acknowledges that he may be correct. *See LeBlanc v. Cahill*,

227 F.3d at 703 (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983)). It therefore held that the question of whether the plaintiff was entitled to the decedent's benefits was governed by federal law. *Id.* at 704. Because ERISA makes no mention of undue influence or forgery, the Court reasoned that federal common law must apply to her claims. *Id.* Finding no established body of federal common law to apply, the court looked to general state law principles for guidance. *Id.* Although the *Tinsley* court held that there were genuine disputes of material fact that precluded summary judgment on the plaintiff's undue influence and forgery claims, it made no mention of whether a jury or bench trial was appropriate on remand. It appears to the Court that this remains an open question, with persuasive arguments on both sides.

As an initial matter, the Court notes that other district courts in this Circuit that have applied the *Tinsley* framework have apparently concluded that plaintiffs are not entitled to a jury trial. *Guardian Life Ins. Co. of Am. v. Bowes*, No. 6:11-CV-00040, 2012 WL 1378556 (W.D. Va. Apr. 20, 2012); *Sun Life Assur. Co. v. Tinsley*, No. 606-CV-00010, 2007 WL 1052485 (W.D. Va. Apr. 4, 2007), *aff'd sub nom. Sun Life Assur. Co. of Canada (US) v. Tinsley*, 266 F. App'x 228 (4th Cir. 2008) (per curiam); *Davis v. Adelphia Commc'ns Corp.*, 475 F. Supp. 2d 600 (W.D. Va. 2007). Moreover, it is well settled that plaintiffs seeking to recover benefits owed to them under an ERISA plan, pursuant to 29 U.S.C. § 1132(a)(1)(B), are not entitled to have a jury hear their claims. *Phelps v. C.T. Enterprises, Inc.*, 394 F.3d 213, 222 (4th Cir. 2005). Likewise, Plaintiffs hoping to obtain

---

153 F.3d 134, 147-48 (4th Cir. 1998) (explaining that there is no preemption where a plaintiff's claims "do[] not threaten ERISA's objectives," "subject plan administrators and plan sponsors to conflicting directives," or "create the potential for conflict in substantive law requiring the tailoring of plans and employer conduct to the peculiarities of the law of each state"). Indeed, unlike most claims that ERISA preempts, Sumpter's claims do not seem to "threaten in any way Congress' goal of national uniformity in the administration of employee welfare and pension plans." *See id.* at 148. Nevertheless, in the absence of instruction from the Fourth Circuit, the Court will follow the *Tinsley* case, as have other district courts in this Circuit. The Court further notes that, substantively, there is little difference in the applicable law whether or not ERISA preempts. As the Sixth Circuit explained, if federal common law governs the claims, the district court looks to traditional state common law principles in determining the applicable law. *Tinsley*, 227 F.3d at 704. This means that a very similar, if not identical, body of substantive law applies to Sumpter's claims whether or not they are preempted.

5

equitable relief under 29 U.S.C. § 1132(c) are entitled only to a bench trial. *Phelps*, 394 F.3d at 222. In short, most ERISA cases proceed to bench trials. These factors tend to suggest that the *Tinsley* framework results in a bench trial for claimants, like Defendant Sumpter, falling within its ambit.

Nevertheless, there are good reasons to conclude that Sumpter's claims are readily distinguishable from typical claims brought under either 29 U.S.C. § 1132(a)(1)(B) or 29 U.S.C. § 1132(c). For each of these provisions, courts have supplied different rationales for limiting the availability of juries, neither of which seems applicable in this context. First, as the Fourth Circuit has explained, no jury trial is available under 29 U.S.C. § 1132(a)(1)(B) in an effort to preserve ERISA's high degree of deference to Plan administrators. *Phelps*, 394 F.3d at 222. Second, juries are not permitted for claims brought under 29 U.S.C. § 1132(c) because the relief sought is purely equitable according to the very terms of that provision. *Phelps*, 394 F.3d at 222. Here, Sumpter does not challenge the authority of the Plan Administrator, but disputes the validity of the operative Plan document. *Cf. Tinsley*, 227 F.3d at 704 n.1 (suggesting that that "where the validity of a plan document itself is in question" courts can look beyond the beneficiary designation form to determine the appropriate beneficiary). Additionally, his claims do not sound in traditional equitable principles, but in state common law claims and defenses.

Finally, there is no dispute that all of Sumpter's original claims are highly fact intensive and turn primarily on credibility determinations. For this reason, they represent the types of claims for which a jury tends to be most appropriate. *Cf. Hana Fin., Inc. v. Hana Bank*, 135 S. Ct. 907, 911, 190 L. Ed. 2d 800 (2015) ("[W]e have long recognized across a variety of doctrinal contexts that, when the relevant question is how an ordinary person or community would make an

assessment, the jury is generally the decisionmaker that ought to provide the fact-intensive answer.").

In sum, the Court finds that the question of whether Sumpter, and those similarly situated to him, are entitled to a jury trial on claims that question the validity of ERISA Plan documents is entirely unsettled. For this reason, the Court will proceed as though the jury's verdict in this case is advisory. It will therefore issue findings of fact and conclusions of law consistent with the verdict.

### III. FINDINGS OF FACT

Having reviewed and carefully considered the evidence and arguments presented at trial, the Court makes the following findings of fact, consistent with the jury's verdict.

1. Decedent Steven Arthur was a participant in a group life insurance policy issued to his insurer, Carolina Restaurant Group, Inc.

2. Decedent died on April 15, 2015, due to metastatic colon cancer.

3. As a participant in the plan, Decedent was enrolled for life insurance coverage in the amount of $150,000.

4. Pursuant to the Plan, "Beneficiary" means the individual named by the policy holder to receive the life amount.

5. On March 2, 2012, Decedent completed an enrollment form for basic and voluntary life insurance coverage in which he named his son, Defendant Sumpter, as the primary beneficiary, and his daughter, Aysha Harrington, as a contingent beneficiary.

6. On April 4, 2014, Decedent signed a new beneficiary designation form, naming his wife, Defendant Joanna Arthur, as the primary beneficiary. The form also designated

four contingent beneficiaries: Defendant Sumpter, Aysha Harrington, and Mesha and Yesha Barber, Joanna Arthur's two daughters.

7. Decedent's execution of the beneficiary designation form was witnessed by Hope McGarrigle, Carolina Restaurant Group's Payroll Benefits Supervisor.

8. At the time he executed the change, Decedent was informed by McGarrigle that he was changing the beneficiaries of his life insurance policy, that all of the proceeds would be payable to his wife, and that the contingent beneficiaries would only receive a portion of the funds if his wife predeceased him.

9. Joanna Arthur assisted Decedent in filling out the form, and all of the information that she entered was written at the direction of her husband. There is no evidence that she attempted in any way to influence his decisions.

10. Decedent indicated to McGarrigle that he understood that Defendant Sumpter would not receive any proceeds from his life insurance policy unless Joanna Arthur died before him.

11. Decedent asked McGarrigle other questions during their meeting, including when his medical leave would be exhausted, when his disability benefits would terminate, and how he could maintain COBRA coverage for his family.

12. Decedent executed the April 4, 2014 beneficiary change of his own free will with a full understanding of what he was doing. There is no evidence that anyone exerted influence over his actions.

13. This Court issued a Consent Order, by and with the consent of both Defendants, directing the Clerk to issue a check for $9,094.60 payable to Carolina Funeral and Cremation Service to pay Decedent's funeral bill.

14. A total of $140,905.40, plus any interest that may have accrued, is currently being held by Clerk as the remaining proceeds payable under Decedent's life insurance policy.

### IV.   CONCLUSIONS OF LAW

1. In compliance with the terms and conditions of the ERISA Plan for Carolina Restaurant Group, Inc., Decedent Steven Arthur designated Defendant Joanna Arthur as the sole primary beneficiary of his group life insurance policy by signing a change in beneficiary form on April 4, 2014.

2. Decedent was not operating under undue influence at the time that he signed the form.

3. Defendant Joanna Arthur is legally entitled to receive the balance of the proceeds held by the Clerk in this action.

### ORDER

Based on the foregoing, the Court finds in favor of Defendant Joanna Arthur. The Clerk of Court is directed to enter judgment accordingly, release the funds deposited with the Court to Defendant Arthur, and close this civil case.

Signed: January 14, 2016

*[signature]*

Graham C. Mullen
United States District Judge